**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| KIRA Y. AKULOVA, | ) | Case No. 07-11654 (CSS) |
| | ) | Reference Docket No. 91 |
| Debtors. | ) | |
| | ) | |

**OPINION**[1]

J. Jackson Shrum
Archer & Greiner, P.C.
300 Delaware Avenue, Suite 1370
Wilmington, DE  19801

Jeffrey S. Cianciulli
Weir & Partners LLP
824 Market Street, Suite 1001
Wilmington, DE  19801

Counsel for the Debtor

Counsel for the Trustee

Dated: July 21, 2009
Sontchi, J. _____

**INTRODUCTION**

The issue before the Court is whether the Chapter 7 debtor may amend her schedules to substitute a personal injury claim for a different claim previously identified as exempt and abandoned by the trustee. Viewing the debtor's request with an "equitable gloss," the Court finds that the debtor is proceeding in bad faith and, thus, the Court will not allow the amendment of her schedules.

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. § 1334. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## STATEMENT OF FACTS[2]

Kira Y. Akulova (the "Debtor") was in an automobile accident in 2005 in which her back was injured. After the accident, she underwent physical therapy and began seeing a chiropractor until her insurance would no longer pay for the treatments. The Debtor still suffers back pain from her injury.

Shortly thereafter, the Debtor retained personal injury counsel. She testified that she did not think the lawsuit had much or any value. Nonetheless, as her counsel was retained on a contingency basis, she felt that she had nothing to lose and decided to file suit. After filing, the Debtors claims that she had very little contact with her attorney. Occasionally, counsel would ask the Debtor for information concerning the condition of her back and whether she had incurred any further medical bills.

The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on November 6, 2007 (the "Petition Date"). On the same date, the Debtor filed her bankruptcy schedules and statement of financial affairs, including schedule C, which listed those items of property that the Debtor claimed as exempt under section 522(b)(3) of the Bankruptcy Code and section 4914(b) of Title 10 of the Delaware Code. The

---

[2] The Court conducted an evidentiary hearing in this matter. The facts set forth herein are derived from the evidence presented at the hearing.

Debtor did not list her personal injury claim as an asset of her estate under schedules B nor C. The Debtor claims that, at the time she filed bankruptcy, she had simply forgotten about her personal injury claim.

Two months later, in January, 2008, the Debtor filed her amended schedules. Once again, the Debtor did not list her personal injury claim as an asset of the estate. Rather, the Debtor included, for the first time, an exemption of $10,000 for a timeshare at a vacation resort in Pennsylvania. The Debtor testified at the hearing that she had no documentation regarding the timeshare and she had determined the value by taking 50% of the purchase price as it was marital property that she assumed would be shared equally with her ex-husband.[3]

The meeting of creditors under section 341 of the Bankruptcy Code was held in March, 2008. Prior to the 341 meeting, the trustee sent the Debtor a questionnaire that, among other things, asked if the Debtor was presently suing anyone or could sue anyone. The Debtor claims that reviewing this document reminded her for the first time of the lawsuit and she responded affirmatively to the question and provided contact information for her attorney. The Debtor testified concerning the personal injury claim at the 341 meeting. At the evidentiary hearing, she stated that, as of the 341 meeting, she believed that the personal injury claim had no value. She also testified concerning the timeshare at the 341 meeting.

---

[3] The Debtor filed for divorce from her now ex-husband in 2006. The divorce is final but not the property settlement.

After the 341 meeting, the trustee abandoned the timeshare and contacted the Debtor's personal injury counsel who told the trustee that the case was worth between $15,000 and $30,000. He also told the trustee that, in August 2007, the Debtor had made a demand of $30,000 and defendant had made a counter-offer of approximately $3,000. It is unclear from the record whether personal injury counsel informed the Debtor of either the settlement offer or his estimate of the value of the claim. The Debtor claims that neither the trustee nor her personal injury counsel informed her of those facts. The trustee had no obligation to do so. It seems unlikely that the Debtor's personal injury counsel failed to inform his client of his estimate and the settlement offer. Indeed, the Court would not be surprised that he did, in fact, inform the Debtor but she has simply forgotten that he did so.

In July, 2008, the trustee sought and the Court approved the retention of the Debtor's personal injury counsel on behalf of the estate. The Debtor did not object to the retention of her former personal injury counsel. Subsequently, the personal injury claim was settled for a payment of approximately $9,000 (after deduction of counsel's fees). The Debtor learned of the settlement on February 9, 2009.

The next day, February 10, 2009, the Debtor filed a second amended schedule C in which the Debtor claimed for the first time an exemption in the net proceeds of the now liquidated personal injury claim. In order to accommodate the exemption in the proceeds of her personal injury claim, the Debtor removed her prior claimed exemption

4

in the timeshare, despite the fact that the trustee, in reliance on the prior filed schedules of exemption, had abandoned the timeshare 10 months earlier.[4]

The trustee objected to the Debtor's amendment of her schedules to include the proceeds of her personal injury claim as an exempt asset.

## LEGAL DISCUSSION

### I. Amendment of a Debtor's Schedules

Under the Bankruptcy Rules,[5] a debtor may, at any time before the case is closed, amend a voluntary petition, list, schedule, or statement.[6] The debtor does not need court permission to amend the documents,[7] and no hearing is required.[8] Courts have held that allowing a debtor to amend these documents at any time prior to the closing of a bankruptcy case is intended to aid in maximizing the opportunity for the debtor to make a fresh start.[9] A debtor may also amend the schedules to add property that is exempt from distribution,[10] and the general rule allows for liberal amendment of

---

[4] Under 11 U.S.C. § 522(b)(3) and 10 Del. C. § 4914(b), a debtor may exempt property having an aggregate fair market value of not more than $25,000. Prior to seeking amendment of Schedule C to include the personal injury claim, the Debtor's exemptions under these sections, including the timeshare, totaled $24,230.00.

[5] Fed. R. Bankr. P. 1009.

[6] *In re De Jounghe*, 334 B.R. 760, 768 (B.A.P. 1st Cir. 2005); *In re Heath*, 331 B.R. 424, 431 (B.A.P. 9th Cir. 2005).

[7] *In re Sheridan*, 38 B.R. 52, 54 (Bankr. D. Vt. 1983).

[8] *In re Dodd*, 46 B.R. 335, 338 (Bankr. E.D. Va. 1985).

[9] *In re Davis*, 38 B.R. 585, 587 (Bankr. M.D. Tenn. 1984); *In re Carley Capital Group*, 138 B.R. 50, 54 (Bankr. W.D. Wis. 1991).

[10] *In re Baker*, 71 B.R. 312, 313 (Bankr. W.D. La. 1987) (quoting 4 COLLIER ON BANKRUPTCY ¶ 521.07 (15th ed. Rev. 1997)); *In re Huizar*, 71 B.R. 826, 829 (Bankr. W.D. Tex. 1987).

exemptions.[11]  Nonetheless, a debtor's proffered amendment to the schedule of property claimed as exempt is not to be allowed automatically, but may be reviewed with an equitable gloss.[12]

An amendment to the schedule of exemptions may be denied if the debtor acts in bad faith or if there is prejudice to a creditor.[13]  The prejudice to the creditor must outweigh any prejudice to the debtor.[14]  Finally, the debtor's ability to amend for the purpose of correcting prior mistakes and/or omissions is generally limited to situations involving inadvertence and does not extend to undoing prior transgressions, such as concealment of known information.[15]

## II.    The Debtor May Not Amend Her Schedules in This Case

In this case, it is clear that the Debtor is acting in bad faith in attempting to amend her schedules to include the personal injury claim.  Although the Debtor had knowledge of her personal injury claim, she chose not to include the claim in her initial and revised schedules.  Even if the Court were to find that the Debtor had forgotten about the claim when she filed bankruptcy, she had recalled it by no later than March, 2008.  Nonetheless she did not amend her schedules for *11 months* to include the claim as an exempt asset.  This not surprising in that she testified at the evidentiary hearing

---

[11] *In re Kaelin*, 308 F.3d 885, 889 (8th Cir. 2002).

[12] *In re Knapp*, 283 B.R. 819, 822 (Bankr. W.D. Pa. 2002).

[13] *Matter of Yonikus*, 996 F.2d 866, 872 (7th Cir. 1993); *Lucius v. McLemore*, 741 F.2d 125, 127 (6th Cir. 1984).

[14] *In re Osborn*, 24 F.3d 1199, 1206 (10th Cir. 1994).

[15] *In re Pier*, 310 B.R. 347, 357 (Bankr. N.D. Ohio 2004).

that, at the time of the 341 meeting, she thought the claim had no value.[16] Rather, she allowed the trustee to retain counsel and to pursue and liquidate the claim, which he did. It was only after she became aware that the personal injury claim had been liquidated as a result of the trustee's efforts that she sought to retain the proceeds as exempt. Moreover, her bad faith conduct was exacerbated by her attempt to substitute the proceeds of the personal injury claim for property that was previously abandoned by the trustee based, in part, on the Debtor's testimony at the § 341 meeting.

It is inherently inequitable to allow a debtor to induce a trustee to act on what the trustee believes to be the creditors' behalf while the debtor retains an option (for which no consideration has been paid) to exempt the fruits of the trustee's labor if, and only if, the trustee is successful. This is certainly true under the facts in this case.

## **CONCLUSION**

For the reasons set forth above, because the Debtor is proceeding in bad faith the Court will not allow the Debtor to amend her Schedule C to include the net proceeds of her pre-petition personal injury claim, totaling approximately $9,000, in her exemptions under section 522(b)(3) of the Bankruptcy Code and section 4914(b) of Title 10 of the Delaware Code. An order will be issued.[17]

---

[16] The trustee testified that personal injury counsel told him that the claim was worth between $15,000 to $30,000 and that a settlement offer of approximately $3,000 had been made by a defendant in August, 2007. The Debtor claims that neither the trustee nor her personal injury counsel informed her of those facts. As discussed above, the Court believes that to be unlikely. In any event, the existence or merits of any claim by the Debtor against her personal injury counsel for failure to inform her of these facts is irrelevant to these proceedings.

[17] As the Court finds that the Debtor is proceeding in bad faith there is no need to discuss whether the estate would be prejudiced by the amendment of the schedules to include the personal injury claim as an exempt asset.